# LAMOILLE COUNTY,

## August Term, 1866.

[ Continued from *ante*, page 78.]

---

## Fitz Henry Price *v.* Dewey K. Hickok.

### *Foreign Judgment.    Conflict of Laws.*

Where judgment is rendered in another state against a non-resident thereof, a citizen of Vermont, without process or notice being served on him in the state where the judgment is rendered, and he does not submit to the jurisdiction by appearing in the suit, the presence and attachment of the property of the defendant in the state where judgment is rendered, give no jurisdiction over the person or validity to the judgment, when sought to be enforced by action in Vermont, either upon general principles, or under the constitution and laws of the United States.    Nor does the fact that process was served upon, or notice given to the defendant in Vermont, or out of the state in which judgment was rendered, add anything to the force or validity of the judgment; such service and notice being regarded as a nullity.

Whether a judgment against a defendant who is a resident of the state where the judgment is rendered, but temporarily absent, without service of process or notice, is valid or not, is not decided.

THIS was an action of debt on a judgment rendered by the superior court of Massachusetts.    The defendant pleaded *nul tiel* record, and other matters as set forth in the opinion of the court.    The plaintiff joined issue as to the plea of *nul tiel* record, and demurred as to the defendant's other pleas.    As to the plea of *nul tiel* record, the court, at the May Term, 1865, ALDIS, J., presiding, found that there was such record, and as to the defendant's other pleas the court sustained the demurrer, *pro forma*, and rendered judgment for the plaintiff, to all of which the defendant excepted.

Price *v.* Hickok.

*G. W. Hendee,* for the defendant.

The court in Massachusetts had no jurisdiction, hence the judgment which is the basis of this suit is void. 29 . Me. 19 ; 6 Barb. 613 ; 1 Cushman, 23 ; 3 Gray, 508 ; 9 Wis. 328 ; 9 Mass. 461 ; 2 Minnesota, 313–319 ; 37 N. H. 9, 470, and cases therein cited ; also Mass. General Statutes, and 13 Gray, 591.

Even if . the officer's return on the original writ, and as shown by the record, gives the court apparent jurisdiction, still ft is only *"prima facie"* and it is competent for the defendant or the courts here to inquire into it, and most certainly this should be so if jurisdiction was obtained by fraud. 13 Gray, 591. The notice to the defendant in the original suit was not legal, as he was without the limits, and not a citizen of Massachusetts ; and although the record shows that the property of the defendant was attached, which, if he owned it, might give the court jurisdiction. Yet, if the attachment was false and fraudulent, most certainly the defendant should not be deprived the right of an investigation of such fraud.

The courts of this state can give no greater force or effect to this judgment than is guaranteed by the laws of Massachusetts, were an attempt being made to enforce it there.

*Wing & Lund,* for subsequent attaching creditors.

*R. C. Benton* and *H. H. Powers,* for the plaintiff, maintained that the judgment of a state court should have the same validity and effect in every other court in the United States which it had in the state where ·it was pronounced, and that whatever pleas would be good thereon in such state and none others could be pleaded in any other court in the United States. *Lapham* v. *Briggs,* 27 Vt. 32 ; *Hampton* v. *McConnell,* 3 Wheaton, 234 ; *Newcomb* v. *Peck,* 17 Vt. 309, WILLIAMS, Ch. J., says :

The record does not derive its efficacy from the fact of notice to the parties but from its being the judgment of a court of record. See also *Dimick* v. *Brooks,* 21 Vt. 578, and *Hoxie* v. *Wright,* 2· Vt. 263 ; *Boston India Rubber Co.* v. *Hoit,* 14 Vt. 92. These cases have been determined after elaborate argument by the best judicial

authority of the state in some of the best digested and most carefully considered decisions to be found in our reports. They must be conclusive. On this point too, the acts of Congress and the decisions of the United States courts are authorative.

This doctrine is correct in principle. We give to the decisions of our own courts a *faith and credit*. This can be no more than *full faith and credit*. To give to the courts of sister states a less faith and credit cannot by any reasoning be regarded as *full* faith and credit. We give to our own courts the faith and credit that they will not only judge correctly on the merits of causes they try, but also that they will not assume jurisdiction that does not belong to them. We are bound by the constitution and laws of the United States to extend the same faith and credit to the courts of other states.

The ablest arguments in those cases where a different doctrine is held are based on the *inconvenience* of compelling suitors to go to the courts where the judgments were rendered to have them set aside. This argument may be good before legislatures whose duty it is to enact laws, but is specious and unsound when addressed to courts whose duty it is to expound them.

From the authorities here cited it is clear that *nil debet* cannot properly be pleaded to a debt of record. Indeed this has been expressly decided in a number of cases. *Wood's Adm'r* v. *Pettis et al.*, 4 Vt. 557 ; *Newcomb* v. *Peck*, 17 Vt. 309 ; *Burns* v. *Belknap*, 22 Vt. 428. The weight of authority is against this plea even in states where a distinction is made between the judgments of their own courts and those of sister states. *McRae* v. *Mattoon*, 13 Pick, 53.

The opinion of the court was delivered by

PECK, J. It appears from the pleadings in this case, in connection with the record of the judgment on which the plaintiff declares, set out on oyer in the defendant's pleas. which are demurred to, that the judgment was recovered in the superior court in Massachusetts, without any process served upon the defendant in Massachusetts, or any notice given him in that state ; that he was never a citizen or resident of that state, but at the time of the commencement of the suit in which the judgment was rendered, and during the whole pro-

ceedings thereof, the defendant was a citizen of Vermont, residing at Morrisville, in this state ; that the defendant never appeared in that suit, and judgment by default was rendered for $10,000. The defendant is set up in the writ in that suit as of Morrisville, Vermont, and the record shows that the officer serving it, after stating that he served the writ by attaching all the defendant's right, title and interest in certain real estate in Massachusetts, and leaving a copy in the county clerk's office in the county where the land lies, states in his return that, "the said Hickok being out of the Commonwealth, and having no last and usual place of abode, agent or attorney therein, to my knowledge, I return this writ without any further service." No further notice or service appears except that it appears that at the term at which the suit was entered, the court, for the alleged reason that the defendant was not then or at the time of the service of the writ, an inhabitant of that state and had no known last and usual place of abode, agent or attorney, in that state, and had not been personally served with process, ordered that the plaintiff notify the defendant of the pendency of the return fourteen days before the then next term, by serving him with a true and attested copy of the order, and that that order was complied with by a service of the order at Morrisville, Vt., by a deputy sheriff, by leaving a true and attested copy thereof with his return of service thereon, at the house of his, the defendant's, usual abode, with Diancy S. Hickok, a person of sufficient discretion resident therein.

The question is whether a judgment thus rendered is personally binding on the judgment debtor when sued in a state or country other than that in which it was rendered, so as to be enforced by action. Assuming that the judgment is regular and in conformity with the laws of Massachusetts, and that by the laws of that state it would be enforced personally against the defendant by an action founded upon it in that state, the question still remains whether it is valid when sought to be thus enforced here.

It is competent for every country, in pursuance of its own laws, to seize the property, real and personal, of an absent debtor, whether citizen or foreigner, or debts due from persons residing within its jurisdiction to such absent debtor, and through the medium of a

judgment appropriate it to the payment of debts due from such absent debtor to its own citizens or to others, even without service of process upon the judgment debtor within its territorial limits For the purposes of the suit, and for subjecting the property thus attached to execution, the location or *situs* of the property within its territory, is a just and valid ground for the proceeding, and gives jurisdiction to the extent of the property seized. But if such debtor has never been a citizen of such state or country, and does not appear in the suit, such judgment, out of the state or country in which it was rendered, has the force only of a proceeding *in rem;* and is not binding as a judgment *in personam*, and has no *extra territorial* force as such. It will be recognized in other countries as a complete justification for whatever was done in the country where it was rendered, in pursuance of the laws of such country. It adds nothing to the force of such judgment to show that notice was served on the defendant out of the state or country where the judgment is recovered. One country can not by such notice, served out of its territory, obtain jurisdiction over non-residents who are citizens of another country, and compel them to submit themselves to the jurisdiction of its courts by an appearance, or be bound everywhere personally by an *ex parte* proceeding. In such case actual notice served out of the jurisdiction of the state or country in which the judgment is rendered, does not render the defendant amenable to the jurisdiction so as to make the judgment personally binding elsewhere. This is not only a principle of the common law, but is the general recognized principle in continental Europe. Indeed it may be said to be the law or comity of nations. It is a principle generally practiced in international jurisprudence; and one country has no reasonable ground to ask another to give any greater effect, or pay any higher respect, to its judgments thus obtained. Jurisdiction of the property does not draw after it jurisdiction of the person.

There are some authorities that make a distinction between a judgment against a citizen of the country where it is rendered, and who is temporarily absent, or has left the country with debts unpaid, and a judgment against one who has never resided in the country; holding the former valid. In *Douglas* v. *Forrest*, 4 Bing. 686, an

action was sustained in England on such a judgment, called in the Scotch law a *horning* judgment, rendered in Scotland against a Scotch absentee. But the court put it on the ground of this distinction. BEST, Ch. J., says: "A natural born subject of any country, quitting that country, but leaving property under the protection of its laws, even during his absence, owes obedience to those laws, particularly when those laws enforce a moral obligation." He further says: "To be sure if attachments issued against any persons who were never within the jurisdiction of the court issuing them, would be supported and confirmed in the country in which the person attached resided, the legislature of any country might authorize their courts to decide on the rights of parties who owed no allegiance to the government of such country, and were under no obligation to attend its courts or obey its laws. We confine our judgment to a case where the party owed allegiance to the country in which the judgment was so given against him, from being born in it, and by the laws of which country, his property was, at the time those judgments were rendered, protected. The debts were contracted in the country in which the judgments were given, whilst the debtor resided in it." *Brequet* v. *MacCarthy*, 2 Barn. & Ad. 951, (22 C. L., 220,) was an action on a judgment rendered in the Island of Mauritius, while it belonged to the British government. The defendant had resided there. The French law was in force there at the time the judgment was rendered, and it was rendered according to that law. By the French law a judgment may be rendered against an absentee who has resided in the country, by serving process on the procurator-general or his deputy; and in that case on the attorney general or his substitute, for the defendant; and it is the duty of such officer to attend to the interests of the absent debtor. The court held the judgment valid upon the ground that the defendant had been a resident of the Island, and that it was to be presumed that the public officer on whom the service was made, did his duty in communicating with the defendant, and in protecting his interests. These two cases in view of the ground on which they were decided, confirm the proposition that the judgment in the case at bar is not valid as a judgment *in personam*. Other authorities deny this dis-

tinction, and hold such judgments against non-residents and absentees invalid, whether rendered against citizens or foreigners, and such is the general current of authority. Which are correct we need not, in this case, decide.

Upon general principles of the common law and of international jurisprudence, or inter-state law, the court rendering the judgment in question had no jurisdiction of the person of the defendant, and the judgment can not be enforced by action out of the state where it was rendered, whatever force it may have in that state. One state or nation has no right to thus give such extra territorial effect to its laws and judicial proceedings, and require another state to enforce them by action.

But the first section of the fourth article of the constitution of the United States provides that: " Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state ; and the congress may by general laws prescribe the manner in which such acts, records and judicial proceedings shall be proved, and the effect thereof." The act of congress of May 26th, 1790, provides for the mode of authenticating the acts, records and judicial proceedings of the states, and then declares that, "the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken." It is insisted on the part of the plaintiff that by force of these provisions, the judgment in question is personally binding and conclusive on the defendant. In some of the early decisions on this subject, it seems to have been the opinion of some of the judges of state courts, that these provisions have reference only to the proof of the existence of such judgment as the record indicates ; that is, that the record duly authenticated according to the act of congress is only made conclusive of the fact that such judgment was rendered, leaving the judgment in other respects as a foreign judgment. This construction is strongly intimated in *Bartlett* v. *Knight,* 1 Mass. 400, by some members of that court ; but this construction never prevailed to much extent. The judgment in that case was held not personally binding, mainly

for the reason that the judgment was obtained in New Hampshire without personal service on the defendant, or appearance by him, and while he was a resident of Massachusetts. The construction which was very soon adopted by the state courts was, that, to the extent of the jurisdiction of the state court, the *faith and credit*, and the *effect*, required by the constitution and laws of congress, was something more than that the record should be conclusive that such judgment was in fact rendered; but that it also was conclusive evidence of the debt, if such was the effect of it in the state where it was rendered; but that the jurisdiction of the state court, in which the original judgment was rendered, was open to inquiry, as well as the right of the state itself to exercise authority over the person or subject matter; that the constitution did not mean to confer on a state a new power or jurisdiction, but only to regulate the effect of the acknowledged jurisdiction over persons and things within the territory of the state. By this construction the international law as to the jurisdiction of one state over non-residents, is left as it existed between the several states before the adoption of the constitution or the articles of confederation. It leaves the jurisdiction of a state, over citizens of another state not within its territory, as it stood at common law, and under the general established principles of international jurisprudence. Under this construction it has been decided by the state courts, that a judgment rendered in one state against a non-resident, a citizen of another state, is not binding on the defendant personally, if no process or notice is served on him in the state where the judgment is rendered, unless he submits to the jurisdiction by appearing in the suit; and that it is of no validity when sought to be enforced by action in another state. These decisions go on the ground that the constitutional provision and laws of congress do not extend to such judgments. These adjudications have been made in almost all the states of the Union, and with great unanimity. *Bissell* v. *Briggs*, 9 Mass. 462; *Hall* v. *Williams*, 6 Pick. 232; *Kilburn* v. *Woodworth*, 5 Johns. 37; *Robinson* v. *Executors of Ward*, 8 Johns. 67; *Fenton* v. *Garlick*, 8 Johns. 150; *Shumway* v. *Stillman*, 4 Cowen, 292; *Kibbe* v. *Kibbe*, Kirby, 119; *Aldrich* v. *Kinney*, 4 Conn. 380; *Harrod* v. *Barretto et al.*, 2 Hall's N. Y. Rep. 302;

*Wilson & Hallett* v. *Niles et al., ib.,* 358 ; *Shumway* v. *Stillman,* 6 Wend. 448 ; *Steele* v. *Smith,* 7 Watts & Serg. 447 ; *Starkweather* v. *Loomis,* 2 Vt. 573. There are many other decisions to the same effect in the state courts. These cases show that the presence and attachment of the property of the defendant in the state where the judgment is rendered, give no jurisdiction over the person, or validity to the judgment, when sought to be enforced by action in another state, either upon general principles, or under the constitution and laws of the United States. Nor does the fact that process was served upon, or notice given to the defendant, *out of the state in which the judgment is rendered,* add anything to the force or validity of the judgment ; such service and notice being regarded as a nullity. In *Kibbe* v. *Kibbe,* Kirby, 119, the judgment was rendered in Massachusetts, and the defendant was notified by a copy of the writ delivered to him in Connecticut. This case was decided in 1786, before the adoption of the constitution, but the articles of confederation contained a provision that : "Full faith and credit shall be given in each of these states, to the records, acts and judicial proceedings of the courts and magistrates of every other state." The court in that case says, full credence should be given to the judgment of any other state, if the defendant is personally served with process in that state, or appears in the action to defend. In *Fenton* v. *Garlick,* 8 Johns. 150, the order of court in Vermont was served on the defendant in New York, and it was held that the service in that state was a nullity, and the judgment invalid. In *Starkweather* v. *Loomis,* 2 Vt. 573, it appeared by the officer's return set out in the record of the judgment on which the action was brought, that the writ was served by copy delivered to the defendant in New Hampshire, and the court granted a new trial in the action upon that judgment in this state, to give the defendant an opportunity to show that the only service on him in the original action was by a copy of the writ delivered to him in this state. This the court would not have done had they not considered that such proof would render the judgment invalid for the purposes of an action upon it in this state.

The decisions of the supreme court of the United States do not conflict with these adjudications of the state courts. In *Mills* v.

*Duryee*, 7 Cranch, 481, the defendant was personally served with process in the original suit, in the state where the judgment was rendered; and in *Mayhew* v. *Thatcher*, 6 Wheat. 129, the defendant appeared in the original action and made defence. In *Hartshorn* v. *Henshaw et al.*, 11 Howard, 165, the principles established by the decisions of the state courts above cited, are fully confirmed, both as to the effect of such judgment upon general principles of international law existing between the several states of the Union, and as to the construction of the provision of the United States constitution and the laws of congress passed in pursuance thereof. The judgment therefore can not be enforced by action in this state, and for that purpose is null and void.

This conclusion is arrived at upon the supposition that the judgment declared on was rendered agreeably to the laws of Massachusetts, and that by those laws the judgment would be binding on the person of the defendant in Massachusetts, as counsel have argued the case mainly upon that hypothesis. But regularly this should have been replied. No such judgment could be recovered at common law, and therefore the regularity and binding effect of the judgment in Massachusetts can not be presumed. But this is immaterial, as we hold that no action can lie upon the judgment here, assuming that the law of Massachusetts in terms makes it binding on the defendant personally in Massachusetts. Even if jurisdiction of the defendant's attached property, situate in Massachusetts, would draw after it jurisdiction of the person of the defendant, it would present a question whether the allegation in some of the pleas, that the defendant had no interest in the property and that that was known to the plaintiff when the suit was commenced, would not defeat the jurisdiction and avoid the judgment. But the decision of the other question renders it unnecessary to decide this.

Judgment reversed and new trial granted.